UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.C.J., <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLO et al., <br><br> Respondents. | CASE NO. 2:25-cv-02486-DGE <br><br> ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 16) |

# I    INTRODUCTION

Before the Court is the Report and Recommendation ("R&R") (Dkt. No. 16) of United States Magistrate Judge Michelle L. Peterson, which recommends granting Petitioner A.C.J.'s amended petition for writ of habeas corpus (Dkt. No. 8). Respondents filed a notice (Dkt. No. 17) that they would not file any objections to the R&R and relied on their return memorandum (Dkt. No. 10). Petitioner likewise filed a notice (Dkt. No. 18) that she did not object to the R&R and relied on her petition and traverse (Dkt. Nos. 8, 13.) For the reasons that follow, the Court ADOPTS the R&R in full.

- 1

## II    BACKGROUND

### A. Factual Background

The Court adopts Judge Peterson's recitation of the facts. (*See* Dkt. No. 16 at 2.) Petitioner is a native of Guatemala who arrived in the United States as an unaccompanied minor in 2016, when she was 14 years old. (Dkt. No. 9 at 3, 4.) She fled Guatemala after receiving rape threats and experiencing physical violence at the hands of her father. (*Id.* at 4.) When she was apprehended at the border on June 4, 2016, she was served a Notice to Appear ("NTA"), charging her removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(6)(A)(i). (Dkt. No. 12 at 2.) She spent "a month or two" in a juvenile facility before the Department of Homeland Security ("DHS") released her to the custody of her uncle, who was living in Oregon. (Dkt. Nos. 9 at 4, 12 at 2.) She was issued an I-220A Order of Recognizance at that time and placed in removal proceedings pursuant to § 236 of the INA, codified at 8 U.S.C. § 1226. (Dkt. Nos. 12 at 2; 14-1 at 2.) There is no evidence Petitioner was ordered detained while in removal proceedings.

On March 13, 2017, Petitioner filed an asylum application with the U.S. Citizenship and Immigration Services ("USCIS").[1] (*Id.*) On December 5, 2017, an immigration judge in Portland, Oregon granted Petitioner's motion to administratively close her removal proceedings "over DHS objections." (Dkt. Nos. 11-1 at 2; 12 at 2.) In the time since, she has married, attended community college, obtained employment, and given birth to two U.S. citizen children, ages three years and nine months. (Dkt. No. 9 at 2, 4.) She has no criminal record. (Dkt. Nos. 8 at 11; 9 at 3.)

---

[1] Petitioner's entry as an unaccompanied minor and her application for asylum later triggered her membership in the *J.O.P.* class. *See* Section II(B) *infra*.

1    In June 2025, despite Petitioner's membership in the *J.O.P.* class, DHS moved to re-
2    calendar Petitioner's removal proceedings because she had "not been accorded any new, lawful
3    permanent status based on relief filed with [USCIS]." (Dkt. No. 12 at 3.) An immigration judge
4    granted the motion on August 20, 2025, but did not order Petitioner into custody. (Dkt. No 11-2
5    at 2.)

6    On December 3, 2025, Immigration and Customs Enforcement ("ICE") stopped a vehicle
7    near Woodburn, Oregon in which Petitioner was a passenger. (Dkt. No. 12 at 3.) She declares
8    she was traveling to work when the vehicle was stopped. (Dkt. No. 9 at 2.) ICE issued an
9    administrative arrest warrant and took Petitioner into custody in Portland. (Dkt. Nos. 11-3 at 2;
10   12 at 3.) That same day, she was transferred to the Northwest ICE Processing Center
11   ("NWIPC") in Tacoma, Washington. (Dkt. No. 12 at 3.) She was deemed a "significant flight
12   risk and public safety risk" and held without bond. (Dkt. No. 11-4 at 4.) On December 4,
13   Petitioner's Order of Recognizance was revoked because of her "failures to comply with
14   reporting requirements." (Dkt. Nos. 11-5 at 2; 12 at 3.) Deportation Officer Rita Soraghan states
15   Petitioner "remains detained under INA § 235(b)(1)." (Dkt. No. 12 at 3.)

16   **B. The *J.O.P.* Class**

17   On November 25, 2024, the U.S. District Court for the District of Maryland granted final
18   approval of a settlement agreement in *J.O.P. v. DHS et al.*, Case No. 8:19-cv-01944-SAG, Dkt.
19   No. 205 (D. Md. Nov. 25, 2024).[2] The case involved a class of asylum seekers who had entered
20   the United States as unaccompanied minors. *Id.*, Dkt. No. 199-2 at 2. The lawsuit challenged
21   the procedures in a 2019 memorandum issued by USCIS (the "Redetermination Memo"), which

---

[2] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the *J.O.P.* settlement agreement as it is generally known and can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 16) - 3

provided that a child in removal proceedings who was an unaccompanied minor and who applied for asylum after turning 18 or reunifying with a legal guardian would have their asylum application rejected by USCIS for lack of jurisdiction. *Id.* The class challenged the policy for violations of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *Id.* The settlement agreement fully rescinded the Redetermination Memo and provided that USCIS would exercise exclusive jurisdiction over class members' asylum applications and required them to be adjudicated on the merits. *Id.* at 7. Importantly here, the settlement requires DHS to "join or non-oppose" any class member's motion to continue or administratively close removal proceedings while USCIS adjudicates their asylum application. *Id.* at 9.

### C. Procedural History

Petitioner filed a petition for writ of habeas corpus on December 5, 2025. (Dkt. No. 1.) On December 11, Judge Peterson granted Petitioner's motion to proceed anonymously and directed her to effect service on Respondents. (Dkt. No. 7 at 1–2.) Petitioner amended her petition that same day. (Dkt. No. 8.) She argues (1) her continued detention violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and (2) her arrest without an individualized flight risk assessment violates 8 U.S.C. § 1357(a)(2) and its implementing regulations, 8 C.F.R. § 287.8(c)(2)(ii). (Dkt. No. 8 at 13–14.) On December 30, Judge Peterson issued an R&R recommending Petitioner's writ of habeas corpus be granted. (*See* Dkt. No. 16.)

## III   STANDARD OF REVIEW

### A. R&R

A district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which [an] objection is made." 28 U.S.C. § 636(b)(1)(C); *see*

*also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.")

Objections to an R&R must be "specific." Fed. R. Civ. P. 72(b)(2). "[M]ere incorporat[ion]" of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Dep't of Corr.*, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021). "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation." *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019). Notwithstanding, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.   Writ of Habeas Corpus**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on her habeas petition, Petitioner "must show she is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn.

May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### IV     ANALYSIS

Judge Peterson recommends (1) granting Petitioner's writ of habeas corpus (Dkt. No. 8); (2) ordering Petitioner's immediate release; and (3) prohibiting Respondents from re-detaining her without adequate notice of the reasons for detention and a meaningful opportunity to respond. (Dkt. No. 16 at 5.) The Court reviews de novo the R&R's analysis of Petitioner's Due Process claim under the Fifth Amendment and agrees Petitioner's petition for writ of habeas corpus should be granted. Though the Court agrees with the R&R, it takes the opportunity to expand upon the procedural deficiencies in Petitioner's detention.

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335.

### A. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi*, 542 U.S. at 529; *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). That Petitioner was arrested in public, detained, transferred to a facility in a different state, and remains in custody today indisputably deprives her of an established liberty interest. The actions of the Government in allowing Petitioner to remain in the community for nearly a decade after her initial detention only strengthens this interest. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

### B. Risk of Erroneous Deprivation Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" 424 U.S. at 335. This factor too weighs heavily in Petitioner's favor.

First, Respondents argue Petitioner is subject to mandatory detention under expedited removal proceedings pursuant to 8 U.S.C. § 1225 and its implementing regulations, 8 C.F.R. § 235 *et seq*. (Dkt. No. 10 at 2–4.) Section 1225 applies to "applicants for admission" to the United States, who are defined as an "alien present in the United States who has not been

admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1).  Applicants for admission fall into two categories, both of which are subject to mandatory detention.[3]  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Individuals detained under Section 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit."  *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

However, as noted above, Petitioner was released from Border Patrol custody in August 2016 pursuant to 8 U.S.C. § 1226 and its implementing regulations, 8 C.F.R. § 236 *et seq*. (*see* Dkt. No. 14-1 at 2), which "governs a separate (non-mandatory) detention scheme applicable when an individual is 'already in the country.'"  *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (quoting *Jennings*, 583 U.S. at 289).  Petitioner's 2016 Order of Recognizance clearly states she was placed in removal proceedings and released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations[.]"  (Dkt. No. 14-1 at 2.)  Release on recognizance is a form of "conditional parole," distinct from the "humanitarian reasons or significant public benefit" parole permitted under Section 1225.  *Martinez*, 792 F. Supp. 3d at 215 (discussing 8 U.S.C. §§ 1225 and 1226).  As that court put it, this distinction "reflects more than an officer's choice of paperwork," because the two types of "parole" serve different purposes.  *Id.*  The distinction is important because non-citizens paroled into the United States are in a "fundamentally different and less protected position than 'those who are within the United States after an entry, irrespective of its legality.'"  *Id.* (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)).

---

[3] Section 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation.  Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" Section 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Officer Soraghan declared that "Petitioner remains detained under INA § 235(b)(1)." (Dkt. No. 12 at 2.)  But this cannot be, given that Petitioner was already present in the United States for almost a decade when she was detained in December 2025.  *See Martinez*, 792 F. Supp. 3d at 216 ("it would make little sense to talk about paroling [the petitioner] 'into the United States'" because "[s]he was already here") (citation omitted).  And Respondents do not provide the copy of Petitioner's Order of Recognizance that says otherwise, nor her NTA—which presumably would have identified the basis for initiating removal proceedings against Petitioner as Section 1226 as well.  Respondents' return memorandum does not acknowledge Section 1226; their position appears to be that any and all non-citizens not previously admitted to the United States are subject to mandatory detention, regardless of circumstance.  (*See generally* Dkt. No. 10.)  The record in this case, and the plain meaning of Section 1225, belie this position.  *See Martinez*, 792 F. Supp. 3d at 218 ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text."); *see also Lepe v. Andrews*, Case No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (the Government's argument that Section 1225 applies to all noncitizens present in the United States is "unpersuasive" and disregards the plain meaning of the statutes) (collecting cases); *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *8–11 (N.D. Cal. Sept. 12, 2025) (condemning the Government "switching tracks" from Section 1226 to Section 1225 to detain the petitioner).

 Petitioner makes the further argument that she is not subject to the expedited removal procedures in Section 1225 at all, because she came to the United States as an unaccompanied minor, reached the age of 18, and was transferred to the custody of DHS, placing her under the

1  purview of 8 U.S.C. § 1232(c)(2)(B). (Dkt. No. 13 at 11.) Under that section, DHS "shall
2  consider placement in the least restrictive setting available after taking into account the [non-
3  citizen]'s danger to self, danger to the community, and risk of flight"; this group of non-citizens
4  is also "eligible to participate in alternative to detention programs." Petitioner argues that her re-
5  detention at NWIPC "is not the least restrictive setting of detention nor does it effectuate her
6  right to alternatives to detention as required by" the statute. (Dkt. No. 13 at 11.) The Court
7  tends to agree.
8         Perhaps more importantly, Respondents do not contend with the fact that Petitioner is a
9  member of the *J.O.P.* class, though Officer Soraghan acknowledges Petitioner's class
10 membership in her declaration. (*See* Dkt. No. 12 at 2.) Under the *J.O.P.* settlement agreement,
11 DHS is required to join or not oppose any class member's motion to continue or administratively
12 close removal proceedings while USCIS adjudicates their asylum application. Case No. 8:19-cv-
13 01944-SAG, Dkt. No. 199-2 at 9. Put another way, *J.O.P.* class membership takes an individual
14 entirely out of the Section 1225 process and places them in a separate process in which ICE
15 cannot execute a removal order of a class member and is obligated to not oppose a stay of
16 removal proceedings until USCIS issues a final determination on the member's asylum
17 application. *Id.* But here, Respondents indisputably moved to re-calendar Petitioner's removal
18 proceedings while her asylum application was—and remains—pending. (*See* Dkt. Nos. 11-2 at
19 2; 12 at 3.) Respondents arguably violated the terms of the *J.O.P.* settlement agreement by
20 reopening removal proceedings against Petitioner on the basis that USCIS had yet to adjudicate
21 her asylum application. (*See* Dkt. No. 12 at 3) (DHS moved to re-calendar removal proceedings
22
23
24

because Petitioner had "not been accorded any new, lawful permanent status based on relief filed with [US]CIS.").[4]

Next, Respondents deemed Petitioner a "flight risk and public safety risk" when she arrived at NWIPC. (Dkt. No. 11-4 at 4.) As Judge Peterson points out, this "summary determination" did not provide Petitioner with an opportunity to challenge that finding and "maximized the potential for a wrongful deprivation." (Dkt. No. 16 at 4.) The fact that Petitioner was not detained while in removal proceedings (prior to the close of the proceedings in December 2017) or when her removal proceedings were re-calendared in August 2025 weakens the Government's position. At either point, an immigration judge could have concluded she was a flight risk and ordered her to be detained—but they did not. "[I]f ICE has apprehended a noncitizen and placed her in removal proceedings without detaining her, it has necessarily already determined that the noncitizen is neither a flight risk nor a threat to the public." *Pablo Sequen v. Albarran*, Case No. 25-cv-06487-PCP, 2025 WL 3724878, at *13 (N.D. Cal. Dec. 24, 2025) (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). There is no evidence on this record that indicated anyone believed Petitioner to be a danger to her community until her detention in December 2025.

A final note: Respondents appear to attribute the re-calendaring of Petitioner's removal proceedings to her failure to report for check-in appointments with ICE. (*See* Dkt. Nos. 10 at 6; 12 at 2.) The evidence indicates she did not miss an appointment in 2021. (Dkt. Nos. 14-3 at 2– 9.) Notwithstanding the apparent dispute on this matter (*see* Dkt. Nos. 10 at 6; 13 at 3–4, 9–10),

---

[4] ICE acknowledges Petitioner's asylum application remains pending "before [US]CIS who *retains* original jurisdiction." (Dkt. No. 12 at 3) (emphasis added). This makes Respondents' reason(s) for moving to re-calendar her removal proceedings even more curious.

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 16) - 11

1    Judge Peterson correctly notes that the question of whether Petitioner's alleged missed check-ins
2    constitute a sufficiently changed circumstance is a matter for a *pre*-deprivation hearing.  (Dkt.
3    No. 16 at 3 n.1) (citing *Monteiro de Souza v. Robbins*, Case No. 1:25-cv-01597-DJC-JDP, 2025
4    WL 3523058, at *1 (E.D. Cal. Dec. 9, 2025)).

5          In short, the second *Mathews* factor tilts sharply in Petitioner's favor.

6          **C.  Government's Interest**

7          The third *Mathews* factor contemplates "the Government's interest, including the
8    function involved and the fiscal and administrative burdens that the additional or substitute
9    procedural requirement would entail."  424 U.S. at 335.

10         The Court finds the Government's interest in re-detaining Petitioner, who was previously
11   released on recognizance without a hearing and is a member of the *J.O.P.* settlement class, is
12   low.  *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  And even if
13   Petitioner could be brought into expedited removal under Section 1225, a pre-deprivation
14   hearing would not interfere with the proceedings.  *See Salcedo Aceros*, 2025 WL 2637503, at
15   *12.  "[D]etention for its own sake is not a legitimate governmental interest."  *Id.*  In this case,
16   given the high risk of erroneous deprivation and the fundamental liberty interest at stake,
17   providing effectively no pre-detention process—as Respondents did here—is constitutionally
18   deficient.

19         In sum, all three *Mathews* factors favor Petitioner.  Respondents' arrest and detention of
20   Petitioner with apparently no process at all violates the due process protections afforded to her
21   by the Constitution.  As a result, Petitioner has proven by a preponderance of the evidence that

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 16) - 12

she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).[5]

## V   CONCLUSION

The Court has reviewed Judge Peterson's R&R (Dkt. No. 16), Petitioner's petition for writ of habeas corpus (Dkt. No. 8), and the entire record *de novo*. The Court ADOPTS the R&R in full and ORDERS:

1. Petitioner's petition for writ of habeas corpus is GRANTED;

2. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL immediately release Petitioner from custody;

3. Petitioner SHALL not be re-detained without notice of the reasons for detention and an opportunity to be heard without a clear statutory basis for detention, which on the record presented is absent; and

4. Within TWENTY-FOUR (24) hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address. The Clerk shall close the case and enter judgment.

---

[5] Because the Court finds that Petitioner's detention violates the Due Process Clause, and thus affords relief on that basis, it does not reach Petitioner's second cause of action.

Dated this 9th day of January 2026.

David G. Estudillo
United States District Judge

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 16) - 14